IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


LISA LUTTRELL                                                    PLAINTIFF


v.                              NO. 3:17-cv-00171 PSH


NANCY A. BERRYHILL, Acting Commissioner                    DEFENDANT
of the Social Security Administration



MEMORANDUM OPINION AND ORDER


Plaintiff Lisa Luttrell ("Luttrell") began the case at bar by filing a complaint

pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the

Acting Commissioner of the Social Security Administration ("Commissioner"), a decision

based upon findings made by an Administrative Law Judge ("ALJ").

Luttrell maintains that the ALJ's findings are not supported by substantial

evidence on the record as a whole.[1] Luttrell maintains that her residual functional

capacity was not properly assessed and offers two reasons why. Luttrell first maintains

that the ALJ failed to give proper weight to the opinions of Dr. Roland Hollis, M.D.,

("Hollis"), Luttrell's treating physician. Second, Luttrell maintains that the ALJ failed

to give proper weight to the opinions of Dr. Samuel Hester, Ph.D., ("Hester"), a

consultative examiner.

---

[1]      The question for the Court is whether the ALJ's findings are supported by substantial evidence
on the record as a whole. "Substantial evidence means less than a preponderance but enough that a
reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d
860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). In making the assessment, the ALJ is required to consider the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006). The ALJ may discount a treating physician's medical opinions if other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions that undermine the credibility of his opinions. See Id.

Luttrell filed her application for disability insurance benefits on November 12, 2014, and alleged that she became disabled and unable to work beginning on May 29, 2011. With respect to the relevant period in this case and the scope of evidence under review, the ALJ could and did find the following:

> [Luttrell] previously filed a Title II application on January 19, 2011, and an Administrative Law Judge issued a hearing decision on June 19, 2012, finding that [Luttrell] was not disabled from May 1, 2010, the alleged onset date in that case, through June 19, 2012, the date of that decision … The Appeals Council denied [Luttrell's] request to appeal the hearing decision; [she] filed an appeal with the Federal district court, which affirmed the prior decision … The previous Administrative Law Judge opinion is thus final and binding in regard to the period already adjudicat[ed] with respect to [Luttrell's] January 19, 2011 Title II application.

> The issue of disability as to the previously adjudicated period is <u>res judicata</u>, involving the same parties and legal questions. This current decision on [Luttrell's] present application thus considers only the time period beginning June 20, 2012, the day after [the] date of the prior decision, and continuing through the date of the [second Administrative Law Judge's] decision. … [A]ny discussion of evidence from … prior to the date of the prior administrative law judge['s] decision is limited to the purpose of providing a foundational history; there is no authority to reopen or revise the prior adjudication and consideration of the evidence relating to the prior period for historical purposes does not imply reopening or revising.

<u>See</u> Transcript at 23. The question for the ALJ, and the question now for review, is whether Luttrell was disabled for purposes of the Social Security Act at any time from June 20, 2012, <u>i.e.</u>, the day after her first application for disability insurance benefits was denied, through December 31, 2014, <u>i.e.</u>, the date Luttrell last met the insured status requirements of the Social Security Act.

Luttrell ably summarized the evidence in the record, <u>see</u> Docket Entry 12 at CM/ECF 3-8, and the Commissioner did not challenge the summary or otherwise place it in dispute. The Court accepts the summary as a fair summation of the evidence. The summary will not be reproduced, save to note several matters germane to the issues raised in the parties' briefs. Like the ALJ, the Court will consider evidence prior to June 20, 2012, <u>i.e.</u>, the day after her first application for disability insurance benefits was denied, only for the purpose of placing Luttrell's impairments in an historical context.

The record reflects that Luttrell saw Hollis on June 1, 2010. <u>See</u> Transcript at 409. His progress note reflects that she had been in an automobile accident and had sought emergency room medical care for the injuries she sustained. Hollis recorded Luttrell's complaints to include syncope episodes and pain in her neck, back, left arm, and left knee. It is not clear what he recommended in response to her complaints.

Luttrell underwent testing for her syncope episodes. See Transcript at 376, 377, 374. The results of the testing were unremarkable, although an MRI of her brain revealed "[s]everal 3mm focal increased T-2 and flare signal intensity at bilateral corona radiata which may represent tiny ischemic changes …" See Transcript at 374.

Hollis treated Luttrell for her syncope episodes and complaints of depression on July 21, 2010; August 17, 2010; September 14, 2010; and again on October 26, 2010. See Transcript at 408, 407, 406 405. He prescribed Dilantin for her syncope episodes and recommended she see a neurologist. He prescribed Celexa and Xanax for her depression and recommended she seek counseling.

On February 22, 2011, Hester saw Luttrell for a mental diagnostic evaluation. See Transcript at 336-344. Luttrell's complaint were recorded to be as follows:

> [Luttrell] reports having problems with chronic pain in both wrists and left shoulder. She has tendon and ligament damage that has required surgery in the past. It was a work related injury on her wrists and she recently fell and injured her shoulder. She has been treated for both depression and anxiety symptoms by her [primary care physician]. She has never seen mental health professionals.

See Transcript at 336. Hester diagnosed a depressive disorder and a pain disorder associated with both medical and psychological factors. With respect to Luttrell's adaptive functioning, Hester opined that Luttrell can tend to her activities of daily living; is able to communicate and interact in a socially adequate, intelligible, and effective manner; is able to attend and sustain concentration on basic tasks; is able to sustain persistence in completing tasks; but is not likely to be able to cope with the typical mental demands of basic work-like tasks or complete work-like tasks within an acceptable timeframe.

Hollis saw Luttrell on what appears to have been five occasions between March 8, 2011, and April 4, 2012. See Transcript at 404 (03/08/2011), 403 (08/01/2011), 402 (10/11/2011), 401 (01/05/2012), 400 (04/04/2012). The progress notes reflect that Hollis treated Luttrell for her complaints of right shoulder pain, wrist pain, left knee pain, chronic obstructive pulmonary disease ("COPD"), tremors, hypertension, seizures, depression, and anxiety. He prescribed, or continued her on, medications that included Soma, Dilantin, Celexa, Xanax, and Symbicort, and he observed that she was taking hydrocodone judiciously. He also ordered testing.

On March 9, 2011, MRI testing of Luttrell's right shoulder was performed. The results of the MRI were positive for a partial tear of the supraspinatus tendon and minimal joint effusion. See Transcript at 370.

After April 4, 2012, Hollis saw Luttrell on what appears to have been fifteen occasions through March 30, 2015. See Transcript at 399 (10/08/2012), 398 (11/27/2012), 397 (02/26/2013), 396 (05/30/2013), 395 (08/29/2013), 394 (01/14/2014), 393 (03/18/2014), 392 (05/22/2014), 391 (08/09/2014), 390 (10/21/2014), 419 (01/30/2015), 418 (04/24/2015), 446 (08/26/2015), 445 (12/29/2015), 451 (03/30/2016). The progress notes reflect that Hollis continued to treat Luttrell for her complaints of right shoulder pain, wrist pain, COPD, hypertension, seizures, and anxiety. He also treated her for complaints that included back pain, which he characterized at times as chronic pain, osteoarthritis, and degenerative joint disease. He also treated her for pain and swelling in her hands, legs, knees, and feet. He prescribed, or continued her on, medications that included hydrocodone, Carafate, Dilantin, and Keppra. Additionally, he ordered testing.

On April 14, 2015, Hollis signed a Treating Physician's Report for Seizure Disorder. <u>See</u> Transcript at 413-414. In the report, Hollis represented that Luttrell experiences petit mal seizures approximately two times a month. The seizures involve, <u>inter</u> <u>alia</u>, a loss of consciousness and are accompanied by fatigue, confusion, and headaches. She takes Dilantin and Keppra and has been doing so since 2010. Her last EEG was on June 9, 2010, and the results of the EEG were within normal limits.

On May 12, 2015, a CT scan of Luttrell's lumbar spine was performed. <u>See</u> Transcript at 424-425. The results of the CT scan were unremarkable as only mild degenerative changes to her bilateral sacroiliac joints were noted.

On July 1, 2015, x-rays were taken of Luttrell's wrists and left knee. <u>See</u> Transcript at 440-443. The results of the x-rays revealed minimal to mild osteoarthritic changes in both her wrists and nothing remarkable in her left knee.

On April 28, 2016, Hollis signed a Medical Source Statement-Physical on behalf of Luttrell. <u>See</u> Transcript at 453-454. In the document, Hollis opined that Luttrell could lift and/or carry less than ten pounds at any time, could stand and/or walk for a total of about three hours in an eight hour workday, could stand and/or walk continuously for about five minutes at one time, could sit for a total of about four hours in an eight hour workday, could sit continuously for about fifteen minutes at one time, and has a limited ability to push and/or pull. He also opined that she should avoid environmental hazards. He attributed her limitations to COPD, seizures, and pain. Hollis represented that his opinions were based on his examinations of Luttrell and cardiology testing. He represented that his assessment was for the period from the day he signed the document, <u>i.e.</u>, April 28, 2016, to April 28, 2017, <u>i.e.</u>, one year in the future.

On February 16, 2017, or approximately seven months after the ALJ's decision, Hollis signed a second Medical Source Statement-Physical on behalf of Luttrell. See Transcript at 9-10. In the document, he re-affirmed the opinions he offered in his first medical source statement. Hollis additionally opined that Luttrell has a limited ability to reach, finger, and handle and has a decreased ability to concentrate and persist in a job setting. He attributed her limitations to COPD, seizures, lumbar degenerative joint disease, and depression. He represented that her limitations had been present since "6/1/11 to indefinitely," see Transcript at 10, and prevented her from maintaining a full-time work schedule.

Luttrell's medical records were reviewed by state agency medical professionals. See Transcript at 113-124, 126-140. The professionals agreed that she could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently, could stand and/or walk for a total of about six hours in an eight hour workday, could sit for a total of about six hours in an eight hour workday, but should avoid exposure to hazards.

Luttrell and members of her family completed a series of documents in connection with her application. See Transcript at 229-230, 231-240, 241-248, 249-255, 256-262, 272-273, 274-281. In the documents, they represented that she experiences constant pain while standing for even a few minutes. She can stand and/or walk for only about three minutes before experiencing pain and can sit for only about fifteen minutes before experiencing pain. Luttrell has difficulty attending to her own care, can do no house or yard work, and does not shop. She spends most of her day on a couch, and her hobbies include reading and watching television. She spends time with others but only with her husband, her daughter, and her parents.

Luttrell testified during the administrative hearing. See Transcript at 64-75. She was born on July 11, 1964, and was fifty-one years old at the time of the hearing. She can read, write, and perform basic mathematics. She has previous work as a certified nurse assistance. She cannot work, in part, because of her seizures, which she experiences approximately one to two times a month. Luttrell experiences pain in her wrists and hands and has had surgery on her right wrist. The pain in her wrists and hands causes her to drop things. She also experiences daily pain in her right shoulder, back, and knees. She takes hydrocodone for the pain, and it helps relieve much of the pain. She cannot stand, walk, or sit for any length of time, and a bottle of soda is about the heaviest object she can lift and/or carry. She also experiences periods of depression and anxiety that prevent her from leaving home.

The ALJ found at step two of the sequential evaluation process that Luttrell has severe impairments in the form of seizures, lumbar spine degenerative disc disease, osteoarthritis/degenerative joint disease and arthralgias, obesity, neuropathy, hypertension, and a depressive disorder/anxiety. He assessed her residual functional capacity and found that "beginning June 20, 2012, through the date last insured," see Transcript at 29, she was capable of performing light work with the following additional physical and mental limitations:

> … [Luttrell] can perform no climbing of ladders, ropes or scaffolds and can have no exposure to unprotected heights or hazards in the workplace. In addition, [she] cannot perform more than frequent handling duties. Furthermore, [she] is restricted to unskilled, specific vocational preparation (SVP) rating 1 or 2 jobs that can be learned within 30 days and do not require more than simple, routine, and repetitive tasks and duties. Moreover, supervision needs to be simple, direct and concrete.

See Transcript at 29-30. In making the foregoing findings, the ALJ gave great weight to the opinions of the state agency medical professionals regarding Luttrell's physical limitations. The ALJ did so because their opinions were supported by the record. The ALJ gave little weight, though, to Hollis' opinions. Although the ALJ recognized that Hollis was a treating source, the ALJ discounted Hollis' opinions for the following reasons:

> … the assessed restrictions were indicated to apply first on April 28, 2016, well after the date last insured. Moreover, though visits to Dr. Hollis did occur during the relevant period, his treatment notes have very few physical examination findings or objective evidence to support his assessment. Further, to the extent that he assessed impairments, he overall found [Luttrell] stable and unremarkable … Thus, his opinions appear too limiting in light of his assessments showing [her] to be not overly limited. Further, the good stability and control of COPD does not demonstrate that this impairment causes more than minimal limitation [of] ability to perform basic work activities; thus, the restrictions assessed by Dr. Hollis related to COPD are too limiting based on the evidence. Accordingly, due to inconsistencies with his treatment notes, due to his opinion focusing on a time period after the relevant period, and due to inadequate explanation and supporting evidence for the assessed restrictions, little weight is assigned.

See Transcript at 39-40. The ALJ did not have an occasion to address Hollis' opinions contained in his second Medical Source Statement-Physical because the document was signed approximately seven months after the ALJ's decision.[2] With respect to Hollis' mental limitations, the ALJ discounted the opinions of the state agency medical professionals. The ALJ also assigned little weight to Hester's opinions. Although the ALJ recognized that Hester was an examining source, the ALJ discounted Hester's opinions for the following reasons:

---

[2]     The Appeals Council considered the opinions on review but found them unpersuasive.

> … [Hester's] opinions were rendered in February 2011, well before the relevant period. Thus, although they are assigned little weight for historical purposes, greater weight cannot be assigned due to the lack of proximity to the relevant period and [other considerations], including the inconsistency with the evidence from the relevant period showing lack of specialized care or attempts to pursue specialized mental health care, lack of significant change in medication or requests for trials of different medications, lack of focus on mental health issues during primary care visits, and overall stability and/or lack of reports of symptoms at primary care visits. Further, the opinions show internal inconsistencies as findings that she could remember 5 forward and 3 backward on digit span, had generally good fund of information, remembered 3 unrelated objects after 5 minutes, performed serial threes slowly but accurately, could add and subtract single digits 20 to 1, and did well on similarities suggest lesser limitation than he indicated.

See Transcript at 38. The ALJ found at step four that Luttrell cannot return to her past work but found at step five that there is other work she can perform. He thus concluded that she was not under a disability at any time during the relevant period.

Luttrell maintains that the ALJ failed to give proper weight to Hollis' opinions. It is Luttrell's position that Hollis was a treating physician who offered support for his opinions and, as a result, the ALJ should have accorded the opinions greater weight. Instead, the ALJ accorded great weight to the opinions of the state agency medical professionals, and Luttrell maintains that the ALJ erred in doing so.

"[W]hether the ALJ grants a treating physician's opinion[s] substantial or little weight, the regulations … provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) [quoting 20 C.F.R. 404. 1527(d)(2)]. In this instance, the ALJ gave good reasons for discounting Hollis' opinions and crediting the opinions of the state agency medical professionals with respect to Luttrell's physical limitations. The Court so finds for the following reasons.

First, substantial evidence on the record as a whole supports the ALJ's finding that Hollis' opinions were made well after the date Luttrell was last insured. Hollis signed the first Medical Source Statement-Physical on April 28, 2016, and represented that his assessment of Luttrell's limitations was for the period from April 28, 2016, to April 28, 2017. Luttrell's date last insured, though, was December 31, 2014, or approximately sixteen months before Hollis signed the document.

The ALJ did not have the benefit of Hollis' second Medical Source Statement-Physical as it was signed after the ALJ's decision. It is possible to view the document with some skepticism given Hollis' representation that Luttrell's limitations have been present from June 1, 2011, to "indefinitely." In any event, his opinions in the document can be discounted because they are inconsistent with his own notes, inconsistent with the medical testing, and inconsistent with other evidence in the record.

Second, substantial evidence on the record as a whole supports the ALJ's finding that Hollis' opinions are inconsistent with his own notes. The ALJ found that Hollis' notes contain "very few physical examination findings or objective evidence to support his assessment. Further, to the extent that [Hollis] assessed impairments, he overall found [Luttrell] stable and unremarkable." A review of Hollis' progress notes confirms the ALJ findings. The notes reflect that Hollis credited Luttrell's complaints and prescribed medications that largely reduced the severity of her symptoms. For instance, he credited her complaints of seizures, diagnosed petit mal seizures, and prescribed medications that included Dilantin and Keppra. After he adjusted her medication on January 14, 2014, she reported little seizure activity at her subsequent visits during the relevant period.

It is true Hollis represented in a Treating Physician's Report for Seizure Disorder that Luttrell's seizures involved a loss of consciousness and were accompanied by fatigue, confusion, and headaches. His representations, though, were based solely on her self-reports. In any event, the ALJ accounted for Luttrell's seizures in assessing her residual functional capacity.

Third, Hollis' opinions are inconsistent with the medical testing. The results of a June of 2010 EEG were within normal limits. An MRI performed in March of 2011 was positive for a partial tear in her shoulder and minimal joint effusion but little else. The results of a May of 2015 CT scan revealed only mild degenerative changes to her bilateral sacroiliac joints. X-rays were taken of her wrists and left knee in July of 2015, and the results revealed minimal to mild osteoarthritic changes in both of her wrists and nothing remarkable in her left knee.

Fourth, Hollis' opinions are inconsistent with other evidence in the record, specifically, the opinions offered by the state agency medical professionals. Those professionals generally agreed that Luttrell could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently, could stand and/or walk for a total of about six hours in an eight hour workday, could sit for a total of about six hours in an eight hour workday, and should avoid exposure to hazards.

Luttrell faults the ALJ for giving too much weight to the opinions of the state agency medical professionals regarding Luttrell's physical limitations. The opinions of non-treating, non-examining physicians do not normally constitute substantial evidence on the record as a whole. See Vossen v. Astrue, 612 F.3d 1011 (8th Cir. 2010). Had the ALJ in this instance relied solely upon the opinions of the state agency medical

professionals in assessing Luttrell's residual functional capacity, the Court would likely agree that the ALJ erred. The record reflects, though, that their opinions were but one of the factors the ALJ relied upon in assessing Luttrell's residual functional capacity. Moreover, the ALJ could and did find that their opinions have support in the record. In short, he did not err in weighing their opinions as he did.

Luttrell next maintains that the ALJ failed to give proper weight to Hester's opinions regarding Luttrell's mental limitations. Although Luttrell concedes that Hester was not a treating physician, she maintains that he was a consultative examiner who supported his opinions. As a result, his opinions should have been given greater weight.

Here, the ALJ gave good reasons for discounting Hester's opinions with respect to Luttrell's mental limitations. The Court so finds for the following reasons.

First, substantial evidence on the record as a whole supports the ALJ's finding that Hester's opinions were made well before the relevant period. Hester made his opinions following his mental diagnostic evaluation on February 22, 2011. The relevant period in this case did not begin for another sixteen months, i.e., on June 20, 2012.

Second, substantial evidence on the record as a whole supports the ALJ's finding that Hester's opinions are inconsistent with the other evidence in the record. The ALJ found that the opinions were inconsistent with the evidence from the relevant period showing a lack of specialized care or attempts to pursue specialized mental health care, a lack of significant change in medication or requests for trials of different medications, a lack of focus on mental health issues during primary care visits, and overall stability and/or lack of reports of symptoms at her primary care visits. A review of the record confirms the ALJ findings. For instance, Luttrell occasionally complained to Hollis about

13

depression and anxiety. He credited her complaints and prescribed medications that included Xanax and Celexa. The medication appears to have stabilized and/or lessened the severity of her symptoms. Moreover, the ALJ could and did find that that Hester's opinion shows some internal inconsistencies. As the ALJ noted, Hester found that Luttrell could remember 5 forward and 3 backward on digit span, had generally good "fund of information," remembered 3 unrelated objects after 5 minutes, performed serial threes slowly but accurately, could add and subtract single digits 20 to 1, and did well on similarities "suggest[ing] lesser limitation than [Hester] indicated."

Luttrell faults the ALJ for giving too much weight to the opinions of the state agency medical professionals regarding Luttrell's mental limitations. The Court cannot agree for two reasons. First, the ALJ discounted their opinions, giving them only "partial weight." See Transcript at 38. Second, their opinions were but one of the factors the ALJ relied upon in assessing Luttrell's residual functional capacity.

On the basis of the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Luttrell's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 22nd day of January, 2018.

UNITED STATES MAGISTRATE JUDGE